UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MIGUEL COCA, et al.,

        Plaintiffs,

v.

CITY OF DODGE CITY, et al.,

        Defendants.

Case No. 6:22-cv-01274-EFM-RES

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS RUBÉN MARTINEZ**

    Dr. Martinez is a highly qualified political sociologist, with special expertise in Hispanic communities. He has provided an expert qualitative analysis in this case regarding how Hispanics are affected by patterns and incidences of discrimination in Dodge City, Kansas, and the broader midwestern United States, which are part of the overall environment that impacts residents' exercise of their voting rights in Dodge City. Defendants cannot seriously attack Dr. Martinez's qualifications or qualitative analytic methods, so instead they attack a straw man: according to Defendants, in order to provide an opinion on this subject, any expert must have, before being retained, previously focused their research on Dodge City in particular, and engaged in a quantitative analysis of the City's voting patterns. There is simply no legal basis for imposing those requirements for admissibility of an expert's opinions on the issues Dr. Martinez has addressed. Defendants' motion to exclude Dr. Martinez should be denied.

**FACTUAL BACKGROUND**

    Dr. Martinez received his Ph.D. in Sociology from University of California, Riverside in 1984; has served as a tenured Professor at multiple universities; chaired the Sociology Department

at Colorado University-Colorado Springs from 1991 to 1994; served as Managing Director of the Culture and Policy Institute at the University of Texas at San Antonio from 2002 to 2005; and served as Director of the Julian Samora Research Institute, which is focused on Latino communities in the Midwest, at Michigan State University from 2007 to 2022. *See* Defendants' Exhibit 1 ("Defs. Ex. 1"), Expert Report of Rubén Martinez, Ph.D. ("Martinez Rep."), Appendix B (Dr. Martinez's curriculum vitae). In addition, Dr. Martinez has won the Spivak Dissertation Award from the American Sociological Association and the President's University Service Award from the University of Colorado. *Id.* ¶ 1.02. Dr. Martinez has dedicated much of his career to studying discrimination against Hispanics, edits a book series titled *Latinos in the U.S.*, and has served as chief editor of a volume titled *Latinos in the Midwest*.

Dr. Martinez was retained as an expert in this litigation and produced a report in which he found that Kansas and Dodge City have a history of racial discrimination against Hispanics. Defendants deposed Dr. Martinez on June 21, 2023 and filed a motion to exclude Dr. Martinez's testimony on September 22, 2023. *See* Doc. 141, Mot. to Exclude Expert Witness Rubén Martinez.

## **STANDARD OF REVIEW**

Federal Rule of Evidence 702 permits a court to allow a qualified expert to testify so long as the "[(1)] testimony is based upon sufficient facts or data, [(2)] the testimony is the product of reliable principles and methods, and [(3)] the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The rule's "liberal thrust" makes "rejection of expert testimony [] the exception rather than the rule." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); Fed. R. Evid. 702 Advisory Committee Note on Rules—2000 Amendment. "Absolute certainty is not required." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (citation omitted). This is especially true in a bench trial where the court's "gatekeeper"

role is significantly diminished. *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM, 2021 WL 2290822, at *4 (D. Kan. June 4, 2021) (Melgren, C.J.) ("Because the doctrine is designed to protect juries [it] is largely irrelevant in the context of a bench trial.") (internal quotation marks omitted); *see also Attorney General of Okla. V. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) ("[W]hile *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial.").

## ARGUMENT[1]

In forming the opinions contained in his expert report, Dr. Martinez did exactly what political sociologists traditionally do: he reviewed a wide variety of sources, academic and other, and, based on his extensive expertise in studying issues of discrimination against Hispanics, reached the conclusions set forth in his report. Defendants may disagree with those conclusions, but that is not a legal basis for excluding them. Without question, Dr. Martinez's "knowledge, skill, experience, training, or education" qualifies him as an expert in this case, *see* Federal Rule of Evidence 702, and the opinions Dr. Martinez formed are based on a sufficiently reliable methodology within his field of expertise.

Defendants' argument in favor of exclusion largely rests on supposed unmet qualifications that Dr. Martinez never purported to have and that are not necessary for Dr. Martinez to speak credibly on the matters discussed in his report. *See* Doc. 142, Brief in Supp. of Defs.' Mot. to Exclude Expert Witness Rubén Martinez ("Defs. Br.") at 6, 10, 11, 13. For instance, Dr. Martinez need not have focused his prior work on Dodge City or the State of Kansas, voting rights, or demography in order to aid the judicial inquiry in this case. *See, e.g., Cage v. City of Chicago*, 979 F. Supp. 2d 787, 823 (N.D. Ill. 2013) ("[T]he mere fact that an expert draws on experience from a

---

[1] Plaintiffs reserve the right to challenge Defendants' interpretations of statements made in Dr. Martinez's report and deposition—some of which are not relevant to the instant motion—at trial.

3

different jurisdiction and geographic part of the country is not a proper basis for exclusion under *Daubert*."). Instead, Dr. Martinez is qualified to provide opinions as a political sociologist, analyzing relevant historical records, scholarly accounts, and other sources regarding relations between whites and Hispanics in any number of jurisdictions, particularly in the Midwest where he has specific expertise, as he has done throughout his career.

Defendants' apparent methodological critiques of Dr. Martinez's report are equally frivolous grounds for exclusion. For instance, Defendants purport to discredit Dr. Martinez for relying on other scholars' work rather than conducting his own field studies, *see* Defs. Br. at 5, 11, yet Defendants fail to support this contention with even a single case in which a court has granted a motion to exclude an expert on such grounds. This is unsurprising given that "*Daubert* does not mandate that experts must rely on any particular source of information." *Cottier v. City of Martin*, No. CIV. 02-5021-KES, 2004 WL 6036041, at *4 (D.S.D. May 27, 2004). Moreover, certain of Defendants' assertions, including the claim that Dr. Martinez "cherry-picked" literature, Defs. Br. at 2, are simply untrue.

At most, Defendants' arguments go to the weight of Dr. Martinez's testimony, which is an improper basis to exclude testimony under Rule 702 and *Daubert*. *See Vowell v. Coffeyville Res. Ref. & Mktg., LLC*, No. 09-1303-EFM, 2011 WL 1754781, at *2 (D. Kan. May 9, 2011) (Melgren, C.J.) (denying *Daubert* "motion [that] does nothing more than set forth Defendant's reasons for why it disagrees with [Plaintiff's] conclusions"). Because the Court will act as the trier of fact in this case, this Court has even more leeway to admit Dr. Martinez's testimony and "weigh[] its persuasive value upon presentation." *Tyson Foods, Inc.*, 565 F.3d at 780; *see also Ramos v. Banner Health*, 1 F.4th 769, 779 n.4 (10th Cir. 2021). Accordingly, the Court should deny Defendants' motion to exclude Dr. Martinez's testimony.

I.  **Dr. Martinez Is Highly Qualified To Analyze Race Relations Such That His Expert Testimony Will Aid The Court's Factfinding.**

"[T]here are many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). As made clear in his report and during his deposition, Dr. Martinez was retained to apply his expertise in political sociology and race relations to existing sources of information regarding Dodge City and the State of Kansas. Defs. Ex. 1, Martinez Rep. ¶ 1.02 ; Defendants' Exhibit 2 ("Defs. Ex. 2"), Martinez Dep. Tr. ("Martinez Dep.") 50:6-7. Dr. Martinez's work focuses on "institutionalized racial features in different sectors of society." Defs. Ex. 1, Martinez Rep. ¶ 1.02. That experience enabled him to contextualize the history of discrimination in Kansas and Dodge City. Dr. Martinez's qualifications are therefore relevant to the factual inquiries this Court will conduct in assessing Plaintiffs' claims under Section 2 of the Voting Rights Act of 1965 ("Section 2") and the Fourteenth Amendment.

   A.  **Dr. Martinez Is Qualified To Offer Expert Testimony Regarding Racial Discrimination In Dodge City And Kansas.**

As reflected in the curriculum vitae appended to his report, Dr. Martinez has spent decades as a scholar analyzing political and sociological trends regarding Hispanic communities nationwide, especially in the midwestern United States. Notably, Dr. Martinez edits a book series titled *Latinos in the U.S.*; has served as chief editor of a volume titled *Latinos in the Midwest*, which has been cited in dozens of academic publications; and organized a special issue of the Latino-focused journal *Dialogo* titled "Latinas and Latinos in the Midwest: Historic and Contemporary Issues." Dr. Martinez's qualifications are more than sufficient to do what he was asked to do in this case—"analyze the history of official discrimination in Dodge City and Kansas

5

and the historical background of the at-large method of election in Dodge City and Kansas." Defs. Ex. 1, Martinez Rep. ¶ 1.

Defendants argue that Dr. Martinez is not an expert on the history of Kansas or Dodge City, which "render[s] his conclusions ad hoc and unsupported." Defs. Br. at 6. In doing so, they fail to credit his extensive research and scholarship on racial dynamics and racial disparities, particularly with respect to Hispanics nationally and in the Midwest, and take an overly narrow view of relevant expertise that is out of step with courts' decisions in voting rights cases. A court hearing a Section 2 vote dilution case rejected a similar argument that an expert "ha[d] no expertise in Sioux culture or discrimination," so he could not testify that Native Americans "in South Dakota bear the effect of discrimination in such areas as education, income, housing, and unemployment." *Bone Shirt v. Hazeltine*, No. CIV. 01-3032-KES, 2003 WL 26091116, at *6-7 (D.S.D. Dec. 31, 2003). The court recognized that the expert's "extensive experience with minority populations in numerous states . . . provides [him] a basis for forming these opinions" and that he could "formulate this opinion from his knowledge, experience, and understanding of demographics in South Dakota." *Id.* In another vote dilution case, the court rejected the defendants' efforts to preclude an expert's testimony as a historian on the basis that he relied on secondary sources. *Cottier*, 2004 WL 6036041, at *4. Dr. Martinez's expertise in "social inequality and intergroup relations," "social movements and political power," and "institutionalized racial features in different sectors of society" is more than sufficient for this case, which at its core is about racial discrimination. Defs. Ex. 1, Martinez Rep. ¶ 1.02.

Defendants similarly claim that, because Dr. Martinez is not an expert on race relations *in Dodge City or the State of Kansas specifically*, he is not qualified to conclude that white citizens in Dodge City might perceive Hispanic residents as a threat to their political power, *see* Defs. Br.

at 7—a phenomenon regularly detailed in Dr. Martinez's academic work. *See, e.g.*, Ruben O. Martinez & Juan D. Coronado, *Introduction*, 21 DIÁLOGO: INTERDISCIPLINARY JOURNAL 3, 3 (2018) ("Latinos face a nativist pushback by White Americans who view them, regardless of citizenship, not only as a threat to 'traditional' American culture but as 'outsiders' taking jobs from White Americans."); Theo J. Majka & Linda C. Majka, *Institutional Obstacles to Incorporation: Latino Immigrant Experiences in a Midsized Rust-Belt City*, LATINOS IN THE MIDWEST 87, 90 (Ruben O. Martinez ed., 2011). Dr. Martinez did not, as Defendants contend, "impart[] national trends wholesale to Dodge City," Defs. Br. at 8, but instead analyzed specific incidents of historical discrimination in Dodge City and surrounding towns in Kansas to determine whether Dodge City likely reflects broader, widely observed national trends. *See Alabama State Conf. of Nat'l Ass'n for Advancement of Colored People v. Alabama*, No. 2:16-CV-731-WKW, 2020 WL 579385, at *4 (M.D. Ala. Feb. 5, 2020) ("Since Dr. Gaylord is qualified to give an opinion on the history of judicial selection in the states, it is proper for him to opine that Alabama's move to judicial elections was consistent (or not) with a similar trend across the states."). As Dr. Martinez explained in his deposition, discrimination is "greatly understudied in [] Dodge City," Defs. Ex. 2, Martinez Dep. 166:8, and the lack of a lengthy historical record is unsurprising given the size of the City, which has never seen a population over 30,000, Defs. Ex. 1, Martinez Rep. ¶ 3.11. If it were necessary for experts to have researched the specific city and state at hand prior to opining in a case, it would be near-impossible to retain experts for cases involving small jurisdictions; indeed, that would disqualify Defendants' own experts.

Although Defendants assert that *Conroy v. Vilsack* is "instructive," Defs. Br. at 5, the court in *Conroy* merely found that it was not an abuse of discretion for the district court to exclude the testimony of an expert when the plaintiff had not "connect[ed] the proverbial dots" between her

7

expertise in sexual harassment and the topic on which she was asked to opine—sex *stereotyping*. 707 F.3d 1163, 1168-69 (10th Cir. 2013). Here, Defendants' contention that Dr. Martinez lacks the relevant expertise is based largely on their view that Dr. Martinez must be an expert on race relations and events in Dodge City and Kansas specifically, which fails for the reasons stated above. This Court has rejected similar arguments by movants in other contexts. *See, e.g.*, *Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1312 (D. Kan. 2002) (doctor who had studied harmful effects of smoking generally can opine on smoking's effect on a specific disease, despite lack of specific expertise in that disease); *Miller v. CNH Indus. Am. LLC*, 645 F. Supp. 3d 1184, 1194-95 (D. Kan. 2022) (product warning expert can opine on the warnings of a specific tractor, despite lack of personal experience with tractors). Dr. Martinez's opinions regarding discrimination against Hispanic communities in Dodge City and the State of Kansas are squarely "within the reasonable confines" of his decades of experience and expertise in race relations. *See Conroy*, 707 F.3d at 1169 (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)).

Defendants also suggest that the Court should exclude Dr. Martinez's testimony because he reviewed specific information about Dodge City for the first time in preparation for this litigation rather than during the regular course of his scholarship.[2] *See* Defs. Br. at 7, 10. But experts need not be familiar with every factual and legal wrinkle of the case at hand. *See City of S. Miami v. Desantis*, No. 19-CV-22927, 2020 WL 7074644, at *8 (S.D. Fla. Dec. 3, 2020) ("An expert is not necessarily unqualified simply because [his] experience does not precisely match the

---

[2]  Defendants also suggest that the Court should exclude Dr. Martinez's testimony because he did not review Defendants' Answer to the Amended Complaint or their mostly unsuccessful Motion to Dismiss. Defs. Br. at 4. Defendants provide no authority suggesting, or explanation for why, this should have any bearing on the instant Motion and/or Dr. Martinez's knowledge, skills, experience, training, or education.

8

matter at hand.") (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). Nor is it suspect or uncommon for an expert to review new data for the first time during litigation. *See, e.g.*, *Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, Inc.*, No. 11-CV-0252, 2014 WL 693328, at *3-4 (N.D. Okla. Feb. 21, 2014) (rejecting argument that expert who conducted historical research was testifying outside of his expertise as an economist, because economic history and historical documents were relevant to the issues in the case). Dr. Martinez's lengthy credentials as an accomplished political sociologist make him more than qualified to conduct the type of analysis contained in his expert report, regardless of any lack of prior study of Dodge City.

### B. Dr. Martinez Is Qualified To Provide Expert Testimony Regarding Racial Discrimination And The Impact Of At-Large Elections On Hispanic Representation.

Dr. Martinez explains in his report that Hispanics "have not been integrated" in Dodge City, that demographic shifts have "likely engendered a perception of threat to political power among White Dodge Citians," and that at-large voting systems are one of many tools that can limit ethnic minorities' access to political representation. *See* Defs. Ex. 1, Martinez Rep. ¶¶ 1.01, 6.03-7.7. Dr. Martinez's decades of experience studying the sociology of Hispanic race relations in the midwestern United States and broader country render him unquestionably qualified to offer such opinions before this Court.

Nonetheless, Defendants claim that Dr. Martinez is not qualified to opine on issues related to "elections and election practices" because his expertise is not specific to laws regulating elections. Defs. Br. at 11-13. Again, courts have not required such specificity. *See, e.g.*, *Blackwell v. Denko*, No. CV 09-377 MCA/WPL, 2011 WL 13174501, at *4 (D.N.M. Mar. 24, 2011) ("[A]s long as an expert has educational and experiential qualifications in the general field that relates to the subject matter of an issue in question, the expert is not required to be a specialist."); *Saginaw*

*Chippewa Indian Tribe of Michigan v. Granholm*, 690 F. Supp. 2d 622, 635 (E.D. Mich. 2010) ("[A]lthough Karamanski has focused his research, writing, and teaching more broadly on the American frontier, he has provided a well-reasoned and well-researched report" on a subtopic thereof.).

Dr. Martinez's extensive experience analyzing trends in Hispanic race relations and discrimination across the country—and particularly in the Midwest—demonstrates that he is without question qualified to provide expert testimony on the impact of the at-large election system on Hispanics in Dodge City in the context of wider racial discrimination.

## II. Dr. Martinez's Expert Report Relies On Sufficient Facts And Applies A Widely Accepted And Reliable Methodology.

The Tenth Circuit has made clear that "[a]lthough an expert opinion must be based on 'facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation, [] absolute certainty is not required'" for admissibility of expert testimony. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (citation omitted). Indeed, "[t]he plaintiff need not prove that the expert is undisputedly correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (citation omitted). Courts examine a number of factors to determine whether an expert's method is reliable pursuant to Rule 702, including but not limited to: "(1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-94). "These factors may or may not be pertinent, depending on the nature of a particular issue, the expert's

particular expertise, and the subject of the expert's testimony," and the Court has "broad latitude to determine" the reliability of the expert's opinions. *Vowell*, 2011 WL 1754781, at *2.

For his report in this case, Dr. Martinez used a methodology common to sociologists and reflective of his published work. Dr. Martinez reviewed a wide range of reliable data and primary and secondary sources in an effort to answer a research question; here, whether and to what extent there is a history of racial discrimination in Dodge City and Kansas, particularly as it relates to Hispanics. Notably, Defendants do not argue that qualitative methodology is not accepted by other experts in Dr. Martinez's field. *Cf. id.* ("To survive Defendant's *Daubert* motion, Plaintiff only needed to show that [the expert's] methodology [] is not unaccepted by the expert community and that there is a factual basis for the assumptions that [the expert] has relied upon."). Instead, Defendants criticize aspects of Dr. Martinez's qualitative approach, such as his consultation of publicly available websites to determine the demographic breakdown of the City and its employees and his reliance on other scholars' work to draw his own conclusions. In fact, the use of sources like government websites, Census and other demographic data, and secondary sources is typical of qualitative methodology, and courts, including this one, have rejected challenges similar to those brought by Defendants here. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *8 (D. Kan. Mar. 10, 2020) ("find[ing] no reason to exclude [the expert's] opinions under *Daubert* based on the methodology he used to cite secondary sources when preparing his expert report"); *Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 122-CV-00581, 2023 WL 3865720, at *2 (D. Colo. June 7, 2023) ("In addition to citing to academic articles and historical texts, it is likely reasonable for an expert [on the history and effects of voter intimidation] to review news articles to inform their analysis."); *Cottier*, 2004 WL 6036041, at *4

("The court finds that the field of political science has generally accepted the qualitative analysis method. The method has been tried and tested, determined to be reliable, and is generally accepted in the field."). Defendants' insistence that this Court should not hear Dr. Martinez's testimony because he did not, for example, "perform any statistical analysis," Defs. Br. at 6, review "actual" restrictive covenants himself, *id.* at 8-9, or "carr[y] out [an] independent stud[y]" on Dodge City or Kansas elections, *id.* at 11-12, is based on a misguided conception of Dr. Martinez's methodology as a political sociologist and a misunderstanding of the requisite standard of reliability under *Daubert*.[3]

Moreover, many of Defendants' attacks not only are legally insufficient but are also factually baseless. For example, Defendants broadly assert that Dr. Martinez is "unfamiliar[] with the cities he references." Defs. Br. at 5 (citing Defs. Ex. 2, Martinez Dep. 166:22-167:11; 170:24-21). Yet, Defendants' only support for this assertion appears to be a portion of Dr. Martinez's deposition where he admits to forgetting the exact locations of various counties in Kansas. Defs. Ex. 2, Martinez Dep. 170:24-171:21, *attached hereto as* Exhibit A. Defendants also claim that Dr. Martinez "cherry-picked" sources. *See* Defs. Br. at 2, 11-12. This, too, is unfounded. During Dr. Martinez's deposition, Defendants directed Dr. Martinez to three studies regarding the disparate impact of at-large voting that were not aligned with other sources Dr. Martinez relied upon to formulate his opinion. *See* Defs. Ex. 2, Martinez Dep. 225:2-237:22. All of these sources were pulled from Dr. Martinez's bibliography, and Dr. Martinez explained that he did not include them in the body of his report because they did not fit the "preponderance of findings." *Id.*; *see* Defs.

---

[3] Indeed, Defendants' approach would require this Court to reject decades of voting rights jurisprudence in which historians, sociologists, and other social scientists have provided qualitative analyses regarding the "totality of the circumstances" inquiry. *See, e.g.*, *Singleton v. Merrill*, 582 F. Supp. 3d 924, 974, 1021-22 (N.D. Ala. 2022) (describing and relying on testimony of plaintiffs' historian expert in finding Section 2 violation), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023).

Ex. 1, Martinez Rep. at Appendix A (listing documents reviewed by Dr. Martinez "in connection with" his work on this case).

For the same reason, there is no merit to Defendants' assertion that Dr. Martinez was "bias[ed]" in how he discussed the story of a 2009 shooting in Dodge City. In his report, Dr. Martinez explained that the incident, in which a Mexican man (who later said he had been defending himself) shot two white men, led a reporter at the City's local newspaper to "'uncover' racial undercurrents and hostilities toward Hispanics among some White Dodge Citians and biases in the criminal justice system." Ex. 1, Martinez Rep. ¶ 3.13. Defendants asked Dr. Martinez at his deposition why he did not also include in his report a statement made in a *New Yorker* article that "local leaders in the Hispanic community seemed intent on taking steps to turn the situation into peaceful coexistence and turn the distrust into trust." Defs. Ex. 2, Martinez Dep. 107:3-8; *see* Defs. Br. at 7-8. In response, Dr. Martinez explained that such a statement would not be "surprising" to him because it seemed that "the incident created some strong reactions" and revealed a "hostility that is dividing the population," which local leaders would likely work to combat to make sure "unrest . . . doesn't worsen." Defs. Ex. 2, Martinez Dep. 107:9-109:4. Defendants' suggestion that Dr. Martinez should have highlighted responses to civil unrest resulting from this incident as purported evidence of improved race relations merely reflects their disagreement with Dr. Martinez's opinions. While Defendants are free to challenge Dr. Martinez's opinions through cross-examination, Dr. Martinez need not anticipate and address Defendants' disagreement in his expert report, and such disagreement "does not furnish a basis for having him excluded." *Vowell*, 2011 WL 1754781, at *2.

Finally, Defendants repeatedly assert that Dr. Martinez ignored Dodge City demographics. *See* Defs. Br. at 6, 7, 9. That is simply untrue. Dr. Martinez reviewed the demographic information

13

included in the Amended Complaint and which Defendants admitted to in their Answer, as well as in over a dozen other publications specific to Dodge City. *See* Defs. Ex. 1, Martinez Rep. ¶ 1.03; Defs.' Joint Answer to Am. Compl., Doc. 78 ("Answer") ¶¶ 33-47. Once again, Defendants' attempts to discredit Dr. Martinez's methodology find no basis in the law or under the facts of this case.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion to exclude Dr. Martinez as an expert witness.

Dated: October 13, 2023

Respectfully submitted,

By: */s/ Sharon Brett*
Sharon Brett    KS 28696
Kunyu Ching    KS 29807
**AMERICAN CIVIL LIBERTIES UNION OF KANSAS**
10561 Barkley Street
Suite 500
Overland Park, KS 66212
sbrett@aclukansas.org
kching@aclukansas.org
913-490-4100

Chad W. Dunn*
Sonni Waknin*
Bernadette Reyes*
**UCLA VOTING RIGHTS PROJECT**
3250 Public Affairs Building
Los Angeles, CA 90065
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org
310-400-6019

Jonathan Topaz*
Sophia Lin Lakin*
**AMERICAN CIVIL LIBERTIES UNION, INC.**
125 Broad Street, 18th Floor
New York, NY 10004
jtopaz@aclu.org
slakin@aclu.org
212-549-2500

Abena Mainoo*
Jonathan I. Blackman*
JD Colavecchio*
Mijin Kang*
Elizabeth R. Baggott*
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
amainoo@cgsh.com
jblackman@cgsh.com
jdcolavecchio@cgsh.com
mkang@cgsh.com
ebaggott@cgsh.com
212-225-2000

Scott Fuqua*
**FUQUA LAW & POLICY, P.C.**
P.O. Box 32015
Santa Fe, NM 87594
scott@fuqualawpolicy.com
505-982-0961

*Attorneys for Plaintiffs*

* Admitted Pro Hac Vice

15

## CERTIFICATE OF SERVICE

Pursuant to D. Kans. Loc. R. 5.1(f), I hereby certify that on this 13th day of October 2023, a true and correct copy of the foregoing was served via the United State District Court's CM/ECF system on all parties or persons requiring notice, including upon attorneys for defendants:

FOULSTON SIEFKIN LLP
Anthony F. Rupp, KS #11590
Tara Eberline, KS #22576
Sarah E. Stula, KS #27156
7500 College Boulevard, Suite 1400
Overland Park, Kansas 66210
(913) 498-2100
(913) 498-2101 (fax)
trupp@foulston.com
teberline@foulston.com
sstula@foulston.com

FOULSTON SIEFKIN, LLP
Clayton Kaiser, KS #24066
1551 North Waterfront Parkway, Suite 100
Wichita, Kansas 67206
(316) 267-6371
(316) 267-6345 (fax)
ckaiser@foulston.com

By: */s/ Sharon Brett*
Sharon Brett KS 28696
**AMERICAN CIVIL LIBERTIES UNION OF KANSAS**
10561 Barkley Street
Suite 500
Overland Park, KS 66212
sbrett@aclukansas.org
913-490-4100