IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MIGUEL COCA and ALEJANDRO RANGEL-LOPEZ, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CITY OF DODGE CITY, *et al.* )<br>)<br>Defendants. )<br>) | Case No. 6:22-cv-01274-EFM-RES |

## DEFENDANTS' REPLY BRIEF TO EXCLUDE EXPERT WITNESS MATTHEW BARRETO, PH.D.

Defendants' motion to exclude the testimony of Dr. Matthew Barreto should be granted. Plaintiffs argue that "Dr. Barreto's methodology is accepted by the expert community and there is a factual basis for any assumptions on which he relied." Doc. 150, p. 4. These statements are incorrect. Courts do not allow the application of homogenous precinct analysis (HPA) when there are no homogenous precincts, and the expert report does not demonstrate any. Courts do not allow ecological inference when there is insufficient data to draw reliable conclusions and there is no demonstrated margin of error. And the Court may exclude a witness based upon bias where the witness becomes an advocate for the cause.

While the Court has more leeway regarding the exclusion of experts in a judge-tried case, Plaintiffs acknowledge that the standards of *Daubert v. Merrill Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993), must still be met. Doc. 150, p. 4. "'[A]ny step that renders the analysis unreliable renders the expert's testimony inadmissible.'" *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.,* 565 F.3d 769, 780 (10th Cir. 2009) (quoting *Mitchell v. Gencorp Inc.,* 165 F.3d 778, 782 (10th Cir.1999)). As noted in *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-33 (3d Cir. 2020), Rule 702 applies whether the trier of fact is a judge or a jury.

The steps Dr. Barreto used to reach his opinions render the analysis unreliable. There is no reason to proceed further because Plaintiffs' sole expert on the threshold issues of *Gingles II,* minority cohesion, and *Gingles III,* white bloc voting, bases his scientific analysis on methods that are scientifically unreliable as applied in this case.

> **1. Dr. Barreto's HPA analysis is scientifically unreliable because there are no homogenous precincts in Dodge City, and Barreto's own report omits any evidence to demonstrate homogeneous precincts.**

Plaintiffs assert two arguments: (1) that Barreto relied on publicly available data, Doc. 150, p. 5, and (2) that Barreto's testimony is the product of reliable principles and techniques, Doc 150, p. 6. Both arguments are a grand illusion. The problem is not whether the data is publicly available–the problem is that the data demonstrates there are no homogeneous precincts. And the problem is not with the validity of HPA generally; the problem is that HPA is not reliable without homogenous precincts. Plaintiffs are attempting to squeeze the square peg of homogenous precinct methodology into the round hole of a community with heterogenous precincts.

In their *Daubert* motion, Defendants cite two federal court cases holding that HPA only applies when the precincts being compared are close to being racially or ethnically homogeneous, typically where 90% of the voters are of the same race or ethnicity. *See Luna v. City of Kern,* 291 F. Supp. 3d 1088, 1118 (E.D. Cal. 2018); *United States v. City of Eastpointe,* 378 F. Supp. 3d 589, 597 n. 2 (E.D. Mich 2019). Before the 2021 City Commission election, Dodge City's precincts were heterogeneous. And in 2021, no precinct reached even 60% Latino voters. Plaintiffs ignore the precedents of *Luna* and *Eastpointe* when responding to Defendants' arguments. They certainly do not suggest that these cases have been overruled or questioned. In fact, they cite *Luna* favorably six times for other propositions in their brief. *See* Doc. 150, pp. 8, 11-13. They also cite *Eastpointe* favorably elsewhere. *See* Doc. 150, p. 8. However, they simply ignore these cases in the HPA section.

Instead of citing any cases that apply HPA when precincts are heterogenous, Plaintiffs refer to several articles, some written by Barreto. None of these articles are attached as exhibits to their brief. None of the articles appear to address the scientific method associated with HPA. None appear to address federal court admissibility standards. While they say that Loewen and Gronfman have said that experts "may need to go below 90% depending on the demographics of a particular jurisdiction," Doc. 150, p. 6, there is no discussion of the science behind such an analysis—or its applicability to circumstances such as these. Here, in analyzing elections that occurred before 2021, Barreto omits any discussion in his report of how far below 90% he is dipping, and he never identifies the number of Latino voters in any precinct at all. Barreto's testimony regarding HPA is unreliable and should be excluded.

> 2. **Dr. Barreto's ecological inference analysis is unreliable because there is insufficient data to draw reliable conclusions, and his own report omits any "confidence intervals" to demonstrate the reliability of his conclusions.**

Plaintiffs seek to have it both ways. They argue that there is enough relevant data for a proper ecological inference analysis, Doc. 150, p. 13, but not enough relevant data to provide a confidence interval, Doc. 150, p. 11. Plaintiffs assert that "Dr. Barreto directly addresses the issue of confidence intervals in his report, specifically noting the problem with relying on confidence intervals with smaller data sets such as what is present in Dodge City." Doc. 150, p. 11. The acknowledgement of the small data set available in Dodge City proves the point. If one cannot identify a reliable measure of error, how can one conclude the measure of confidence? There is not enough evidence or relevant data to lead to conclusions using ecological inference of endogenous elections in Dodge City. It is a small community. There are few voters and few candidates. There are few precincts. There is low voter turnout. No voter identifies his or her preferred candidate, voting instead for three candidates. In the 2021 election, when Latino voters had two majority-minority precincts, a candidate who identifies as Latino was elected.

Consistent with the scientific method, *Daubert* instructs courts to consider the measure of error in cases involving scientific techniques. Ecological inference is a scientific technique in the social sciences, but it is one to which scientific principles must be applied. As noted in Defendants' brief, Dr. Barreto has written that ecological inference is under fire for being unreliable in the social sciences but has been "regularly used" in voting rights cases. Doc. 144, p. 8. Given his own acknowledged concerns about the scientific reliability of ecological inference, it is particularly important that the level of uncertainty of Barreto's opinions be identified. He has conspicuously failed to do so—in his report and even in Plaintiffs' response brief. One can only be left with the following question: "What is the measure of uncertainty associated with Barreto's purported use of the ecological inference method?" One does not know, and that is fundamentally unacceptable. If the measure is based on something other than confidence intervals, what is that measure of error, and where is it identified? One cannot find it in Barreto's report. One cannot find it in Barreto's deposition. One cannot find it in Plaintiffs' Response Brief. Science deserves better. As noted, *Daubert* recognizes that the Court should ordinarily consider the known or potential rate of error. The Reference Manual on Scientific Evidence (ignored by Plaintiffs in their Response) and the Tenth Circuit take seriously the lack of a measured error rate. Doc. 144, pp. 8-9.

Recognizing the challenges of establishing reliability based on the limited data set in endogenous elections, Plaintiffs argue that "[i]t is correct methodology for experts in VRA cases to also examine exogenous elections." Doc. 150, p. 13. In doing so, however, they acknowledge that endogenous elections are the most probative. *See* Doc. 150, p. 11. Barreto's own report merely states that these exogenous elections "can tell us something important about voting trends and patterns in the jurisdictions we are studying[.]" Doc. 144, Ex. A., ¶ 44. It is one thing for exogenous elections to "tell us something" and another thing for an expert report to provide a scientifically

reliable method of determining racially polarized voting. In that exogenous election analysis, Barreto inaccurately asserts there have been "white" precincts and "Latino" precincts in Dodge City when there have not. As previously stated, statewide exogenous elections for non-Latino partisan candidates do not provide scientific support for any conclusions in nonpartisan City Commission races.

3. **Dr. Barreto is biased to the extent that his opinions in this case must be seen as lacking credibility.**

That Barreto has been permitted to testify in other cases tells us nothing about whether he is biased in this case. That Barreto has been "credited" in other cases in which UCLA Voting Rights Project attorneys have served as Plaintiffs' counsel likewise tells us nothing about his biases here. Plaintiffs cite no opinions in which the bias question was at issue under the facts. What we know here is that Barreto has omitted essential information. He has omitted data related to the number of Latino voters in any precinct in Dodge City despite arguing for homogeneous precinct analysis. He has offered opinions based on insufficient data and has omitted any information demonstrating a measure of uncertainty.

Accordingly, it is rational to conclude he is an advocate rather than scientist here. Why? The answer is simple—this lawsuit arose out of a class assignment in his classroom, the entity that he co-founded brought the lawsuit, and he serves as the Plaintiffs' sole expert on the key issue in the case. If there is a valid claim to be made here (and the evidence does not support it), it would have been the appropriate action to divorce the purported expertise from the advocacy. Plaintiffs should not be permitted to do both.

Respectfully submitted,

**FOULSTON SIEFKIN LLP**

By: */s/ Anthony F. Rupp*
    Anthony F. Rupp, KS #11590
    Tara Eberline, KS #22576
    Sarah E. Stula, KS #27156
    7500 College Boulevard, Suite 1400
    Overland Park, Kansas 66210
    T (913) 498-2100 | F (913) 498-2101
    trupp@foulston.com
    teberline@foulston.com
    sstula@foulston.com

    - and-

    Clayton J. Kaiser, KS #24066
    FOULSTON SIEFKIN, LLP
    1551 North Waterfront Parkway, Suite 100
    Wichita, Kansas 67206
    T (316) 267-6371 | F (316) 267-6345
    ckaiser@foulston.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on the 27th of October 2023, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record, and a true and correct copy was served by electronic mail upon:

Sharon Brett
Kunyu Ching
**AMERICAN CIVIL LIBERTIES UNION OF KANSAS**
sbrett@aclukansas.org
kching@aclukansas.org


Chad W. Dunn *(Pro Hac Vice)*
Sonni Waknin *(Pro Hac Vice)*
Bernadette Reyes *(Pro Hac Vice)*
**UCLA VOTING RIGHTS PROJECT**
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org


Jonathan Topaz *(Pro Hac Vice)*
Sophia Lin Lakin *(Pro Hac Vice)*
**AMERICAN CIVIL LIBERTIES UNION, INC.**
jtopaz@aclu.org
slakin@aclu.org

Abena Mainoo *(Pro Hac Vice)*
Jonathan I. Blackman *(Pro Hac Vice)*
JD Colavecchio *(Pro Hac Vice)*
Mijin Kang *(Pro Hac Vice)*
Elizabeth R. Baggott *(Pro Hac Vice)*
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
amainoo@cgsh.com
jblackman@cgsh.com
jdcolavecchio@cgsh.com
mkang@cgsh.com
ebaggott@cgsh.com


Scott Fuqua *(Pro Hac Vice)*
**FUQUA LAW & POLICY, P.C.**
scott@fuqualawpolicy.com


*ATTORNEYS FOR PLAINTIFFS*


*/s/ Anthony F. Rupp*